Loesnitz v. Seelinger, Treasurer, et al.

No 15,133.

LOESNITZ v. SEELINGER, TREASURER, ET AL.

COUNTY COMMISSIONERS.—*Verbal Call for Special Session.*—Oral notice given by the county auditor to the board of county commissioners of a special session is sufficient.

SAME.—*Powers at Special Session.*—*Free Gravel Road.*—Where the board of county commissioners are lawfully convened in special session, or where they are lawfully in special session for the transaction of other business, they are authorized, without previous notice to any party interested, to act upon a petition then presented for the establishment of a free gravel road, and to act in all matters relating to the establishment and the construction thereof.

SAME.—*Session Unauthorized.*—*Acts Void.*—Any act performed by a board of county commissioners at a session held without authority of law is void.

COURTS.—*Lapse of Term.*—*Inferior Court.*—*Failure to Meet.*—A failure of a court of inferior jurisdiction to meet at the time and place fixed by law for its meeting, will, ordinarily, in the absence of a controlling statute, result in a lapse of that particular term.

SAME.—*Failure to Meet on Day Adjourned to.*—A failure of a court to meet on the day to which it has adjourned will result in the lapse of the remainder of the term, unless there exists some statute which prevents it.

SAME.—*Board of County Commissioners Meeting with Board of Equalization.*—*Lapse of Term.*—The board of equalization of a county met at the time required by statute, which was the day designated by law for the board of county commissioners to meet, but there was nothing in the record to show that there had been such a meeting of the board of equalization, except a recitation in the board of county commissioners' record of the following day to the effect that the board of equalization having adjourned the commissioners convened on such following day.

*Held*, that the presumption was that the board of commissioners met with the board of equalization upon the day it was required to convene, and made a record of such meeting; that the board of commissioners organized as a board of commissioners on that day (for the law required them to act as a board of commissioners when sitting with the board of equalization, and not as individuals), and that having so organized as such a board on the first day of the term, they were lawfully in session as a board of county commissioners upon the second day of their term.

GRAVEL ROAD.—*Assessment in Part Valid.*—*Injunction.*—If any part of an assessment for a free gravel road made against the land of an owner seeking to enjoin its collection is valid, he can not have an injunction until he has paid the part that is valid.

Loesnitz *v.* Seelinger, Treasurer, *et al.*

SAME.—*Assessments are Several.*—*Judgment in Favor of One Land-Owner does not Aid Another.*—Assessments for the purpose of building a free gravel road are several and not joint; and the fact that some of the parties whose lands have been assessed for such improvement have procured a decree declaring the assessments, as to them, void, does not affect those who have procured no such a decree.

SAME.—*Part of Assessment Illegal.—Collateral Attack.—Rule as to Tax Illegal in Part does not Apply.*—The fact that a part of an assessment for a free gravel road is illegal does not render such assessment void, although the illegal can not be separated from the legal part; and such assessments can not be collaterally attacked, the remedy being by appeal. The rule applicable to a tax illegal in part and inseparably connected with the part that is legal, does not apply to such an assessment.

SAME.—*Contract for Construction in Part Illegal.*—The fact that a contract for the construction of a free gravel road is in part illegal will not render the assessments void, nor will the fact that the cost of the work exceeds the estimates, render the assessments, within the estimate, void.

SAME.—*Purchaser of Bonds not Responsible for Proper Application of Funds thus Raised.*—Assessments not being made to pay off the contractor, but to pay off the bonds issued to raise money to pay him, many objections that might otherwise be raised to the contractor's collecting such assessments can not be made when the county seeks to collect them. The purchasers of such bonds are not responsible for the proper application of the funds raised by the sale of the bonds.

SAME.—*Effect of Judgment Approving Report of Assessment of Benefits*—The order of the board of commissioners approving and confirming the report of the assessment of benefits and damages has the force and effect of a judgment against the owner of the land who has been properly notified, in so far as it affects the land, as much so as any other judgment of competent jurisdiction.

JUDGMENT.—*Collateral Attack.—When no Appeal Lies.—Inferior Court.*—The rule which renders the judgments of a court of competent jurisdiction impervious to collateral attack, applies as well where no appeal lies as to cases where appeals are allowable, even to the judgments of a board of county commissioners.

From the Ripley Circuit Court.

A. Stockinger, C. K. Paget, J. B. Rebuck, C. H. Wilson and J. L. Benham, for appellant.

W. G. Holland, for appellees.

COFFEY, J.—The complaint in this case consists of two paragraphs, to each of which the circuit court sustained a

demurrer, and thereupon the appellees had judgment for costs. The assignment of error calls in question the correctness of this ruling. Each paragraph seeks to obtain a decree enjoining the collection of an assessment made against the land of the appellant to aid in the construction of a free gravel road, and each proceeds upon the theory that the proceedings of the board of commissioners, resulting in the assessment, are void.

In the first paragraph it is alleged that the board of commissioners, at the time of making the preliminary order in the proceeding, was called in extra session by the verbal order of the auditor of the county in the month of April, 1884; that it did not meet on the first Monday of June, 1884, as required by law, but met on the Tuesday following the said first Monday, being the 3d day of June; that the term could not exceed nine days, and that the report of the viewers was filed and approved on the 12th day of June, 1884; that said board met in special session on the verbal call of the auditor, on the 12th day of March, 1885, and while so in special session, on the 20th day of that month, appointed the committee to apportion the benefits received from the construction of the free gravel road for which appellant's land was assessed; that the estimated cost to make said improvement was the sum of $14,622, and that the board of commissioners let the contract for said work at the sum of $13,616, and in addition thereto agreed to pay two dollars per yard for all retaining walls necessary on said road; that the retaining walls necessary to be made were fifteen hundred yards amounting to the sum of $3,000; that on the verbal call of the auditor said board again met on the 17th day of December, 1885, and on the 19th day of the month received and approved the report of the committee to apportion the benefits; that at least one-half of the land assessed to pay for said work is so imperfectly described as to be incapable of identification.

The second paragraph, in addition to many of the allega-

tions above set out, alleges that the contract for the retaining walls on said free gravel road was let privately, without bids and without competition, at a price largely in excess of the actual value or necessary cost of the work; that the amount of benefits to be received from said work was never ascertained by any committee or person having authority so to do; that the actual benefits do not exceed $7,000, and that the cost of said improvement exceeds the benefits in the sum of $7,600; that certain of the parties whose lands are assessed for the construction of said improvement brought their suit in the Ripley Circuit Court to enjoin the collection of said assessments, in which such proceedings were had that said court adjudged that the board of commissioners had no jurisdiction over the subject-matter or over the persons of said parties in the proceedings to make said improvements, and entered a decree enjoining the appellees in this case from collecting the assessments as to them, which decree is in full force, unappealed and unreversed; that said board unlawfully and unjustly ordered and contracted for the construction of three bridges on said road, one of the probable cost of $6,000, one of the probable cost of $1,000, and one of the probable cost of $800, the cost of which bridges went into and constitutes a part of the assessments against the land within two miles of said road, and is part of the assessment against the land of the appellant; that the cost of said bridges is so commingled with the legitimate cost of the construction of said road that it can not be separated therefrom; that the bonds issued for the construction of said road were sold in the month of June, 1884, for cash at their face value before the work done on said road exceeded the sum of $600; that the money derived from the sale of said bonds was paid into the county treasury and has since been squandered in useless litigation and otherwise, without the completion of said improvement, and that the work on said improvement has never been completed, nor is any attempt being made to complete the same, and that said road

is in worse condition for travel than before work thereon was commenced.

It is contended by the appellant:

*First.* That the meeting of the board of commissioners, in special session, under the verbal call of the auditor of the county, was illegal, and that any action taken by such board while thus in session is void.

*Second.* That the board of commissioners can act upon a gravel-road petition only when in regular session.

*Third.* That by a failure of the board of commissioners to meet on the first Monday of June, 1884, the June term of the court lapsed, and that they could not, therefore, meet and hold the June term, and that all acts of the board while pretending to hold the June term are void.

*Fourth.* That the proceedings of the board of commissioners are void because the contract for the retaining walls was let without bids therefor having been previously received.

*Fifth.* That the proceedings of the board of commissioners are void because the cost of constructing the road exceeds the benefits.

*Sixth.* That the proceedings of the board of commissioners are void because they undertook to build bridges costing more than seventy-five dollars by special tax assessed against a part only of the citizens of the county.

*Seventh.* That the judgment of the Ripley Circuit Court declaring the assessments for the improvement of the road void as to a part of those whose lands are assessed, avoids the assessments as to all.

It has been held by this court that an oral notice given by the county auditor to the board of county commissioners of a special session is sufficient, and when so convened, or when they are lawfully in special session for the transaction of other business, they are authorized, without previous notice to any party interested, to act upon a petition then pre-

sented for the establishment of a gravel road. *White* v. *Fleming*, 114 Ind. 560.

We have no reason to doubt the correctness of the conclusion reached in the case here cited, and for that reason we follow it in this case.

That the board of commissioners in this State have the power to act in all matters relating to the establishment and construction of free gravel roads, when in special session, is no longer an open question. *White* v. *Fleming, supra; Anderson* v. *Claman*, 123 Ind. 471 ; *Stipp* v. *Claman*, 123 Ind. 532 ; *Fleener* v. *Claman*, 126 Ind. 166.

The third contention of the appellant presents a question of much difficulty, and one that has not, to our knowledge, been passed upon by this court. It may be conceded, however, that if the failure of the board of commissioners to meet on the first Monday in June resulted in a lapse of the June term, such board could not meet on Tuesday following and hold its regular session.

Such a meeting would be without authority of law, and any acts performed by the board while *so* acting would be absolutely void. *Doss* v. *Waggoner*, 3 Texas, 515; *Norwood* v. *Kenfield*, 34 Cal. 329; *Wicks* v. *Ludwig*, 9 Cal. 173; *Hernandez* v. *James*, 23 La. Ann. 483 ; *Ex parte Osborn*, 24 Ark. 479 ; *Brumley* v. *State*, 20 Ark. 77 ; *Garlick* v. *Dunn*, 42 Ala. 404 ; *People* v. *Bradwell*, 2 Cowen, 445; *People* v. *Sanchez*, 24 Cal. 17.

It is also undoubtedly true that where the law fixes the time and place for holding a court of inferior jurisdiction, the failure to meet at the time and place designated in the law will, ordinarily, in the absence of a controlling statute, result in a lapse of that particular term of court. *People* v. *Bradwell, supra; People* v. *Sullivan*, 2 N. Y. Supp. 135; *May* v. *People*, 8 Col. 210 ; *Garza* v. *State*, 12 Texas App. 261 ; *Langhorne* v. *Waller*, 76 Va. 213.

Following this general rule it has been held that where the court adjourns from one day to another given day, a

failure to meet on the day to which the court is adjourned will result in a lapse of the remainder of the term, unless there exist some statute which prevents such lapse. *Sullivan* v. *People, supra ; Langhorne* v. *Waller, supra.*

An examination of all the authorities upon the subject will disclose the fact that the rule is the result of the construction placed upon the statutes of the several States fixing the time and place of holding court, and is, in most cases, regarded as being somewhat technical. Regarded in that light the several States in the Union, by proper legislation, have guarded against the consequences of the failure of the judge to appear on the first day of the term by providing that certain designated officers shall adjourn the court from day to day, for a given period. So reluctant have the courts been to holding that a failure of the judge to appear will work a lapse of the term that it has been held the term would not lapse where the designated officers failed to adjourn the court from day to day, as provided by law. *May* v. *People, supra ; Thomas* v. *Fogarty,* 19 Cal. 644.

In the light of these several authorities we proceed to examine the case before us.

On Tuesday, the 3d day of June, 1884, the board of commissioners of Ripley county made the following record :

" Commissioners Court, June term, 1884 :    June 3, 1884. The board of equalization having adjourned, commissioners court convened, with John W. Neighbert as president, John H. Ellers and Phillip Ensminger, commissioners, and Nicholas Comet, auditor, acting clerk."

Section 6397, R. S. 1881, provides that there shall be an annual board of equalization, which shall be composed of the board of county commissioners and four freeholders, selected from different parts of the county, to be appointed by the judge of the circuit court.

Section 6398 provides that the board of equalization shall meet at the room of the county commissioners, in the court-house of each county, on the first Monday in June, annually.

It is not claimed that the board of commissioners of Ripley county did not meet with the board of equalization on the first Monday of June, 1884. Indeed, it affirmatively appears that the board of equalization had been in session, and, as public officers are presumed to have done their duty, we must presume they met at the time designated by law. They could not meet without the board of commissioners, for that body constituted an indispensable part of such board. Nor could the board of commissioners act as a part of the board of equalization without first organizing as a board of commissioners, for they do not act individually but as a body.

Under the showing made by the complaint, we must presume, therefore, that the board of commissioners of Ripley county organized on the first Monday of June, 1884, for the purpose of taking part with the board of equalization, and that they were in session at their room, in the court-house of the county, for that purpose. As to what record they made upon that subject we are not informed, but again we must presume they did their duty and made the proper record. Having organized as a board of commissioners, on the first Monday of June, for the purpose of taking part with the board of equalization, we think they might meet again on the Tuesday following and organize for the purpose of transacting general business, and that their failure to enter of record their organization on Monday did not result in a lapse of the June term.

Having reached this conclusion, it follows that the action of the board, while thus in regular session, in approving the report of the viewers, was valid.

The commissioners then having acquired jurisdiction over the subject-matter and over the persons to be affected by the improvement sought to be made, it remains to inquire whether the other matters of which complaint is made are of such a character as to render the whole assessments invalid and to entitle the appellant to an injunction against the collection

of the same. Unless the whole assessment is void it will not be claimed that an action for injunction can be maintained, for he who seeks equity must first do equity. If any part of the assessment made against the appellant's land is valid he can not have an injunction until he has paid such part as is valid. Ricketts v. Spraker, 77 Ind. 371.

In a further consideration of the objections urged against this assessment we must, also, keep in mind the familiar rule that where a court of competent jurisdiction acquires jurisdiction over both the subject-matter and the persons to be affected, its rulings however erroneous are not, generally, void.

We do not think the manner of letting the contract for the work in making the improvement in controversy, renders the whole assessment void. It can not be said that because the contract for making the retaining walls was illegal, assuming it to be so, would deprive the contractors of the right to pay for grading and macadamizing the road proper; nor would the fact that the cost of the work exceeded the estimates render the assessments, within the estimate, void.

The question as to whether the contractor would be able to collect his full pay is a question entirely different from the one as to whether he would be entitled to receive a sum equal to the estimated cost of the work.

Assuming, also, without deciding, that it was error to include in the estimated cost of the work, bridges costing over seventy-five dollars, yet we think it was merely an error which does not render the entire assessment void.

In considering these questions it is not improper to keep in mind the fact that the assessments are not now made to pay the contractor for his work, nor to pay for the improvement, but they are made for the benefit of the holders of the bonds issued by the board of commissioners to raise money to pay for the improvement.

The contractor and the cost of the improvement are paid by the board of commissioners out of a fund raised

from the sale of the bonds, and the assessments are collected to pay the purchasers of the bonds. Certainly it will not be contended that the purchasers of the bonds issued by the board are to be held responsible for the proper application of funds to the purpose for which they are raised. Such a construction of the statute would wholly defeat the object of the law, for if the purchaser of such bonds was compelled to take the hazard of losing his money in the event the funds were wasted or misapplied, he would not purchase. For these reasons, among many others that could be given, we think that mere error in the board in the matter of letting the contract, in the matter of making the estimates, or even in recklessness, or wanton or inexcusable negligence in the use of the funds, when raised by the sale of the bonds, can not affect the validity of the assessments.

Nor do we think it is shown that there has been a judgment of the Ripley Circuit Court which relieves appellant from the assessment set up in his complaint. The assessments for the purpose of building free gravel roads are several and not joint.  *Fleener* v. *Claman, supra.*

The fact that some of the parties whose lands have been assessed for this improvement have procured a decree declaring such assessments, as to them, void, does not help those who have procured no such decree.

We do not think the circuit court erred in sustaining the demurrer to the complaint before us.

Judgment affirmed.

BERKSHIRE, J., took no part in the decision of this cause.
Filed Dec. 11, 1890.

### ON PETITION FOR A REHEARING.

A petition for a rehearing, supported by an earnest argument, has been filed in this case, in which it is insisted that this court erred in the opinion heretofore rendered, in this :

*First.*  In holding that an action will not lie to enjoin the

collection of an illegal assessment to aid in the construction of a free gravel road until the legal assessments have been paid, where the legal and illegal tax has been so commingled as that they can not be separated.

*Second.* In failing to decide that an appeal will not lie from a proceeding to establish and construct a free gravel road.

The contention of the appellant is that the viewers appointed by the board of commissioners to view the road in. controversy, and estimate the expense of performing the work petitioned for, in estimating such expense took into consideration the construction of certain bridges which could not be constructed under the law providing for free turnpike roads, and that the viewers appointed to apportion the estimated costs of such improvement included in the amount apportioned against the appellant's land the cost of constructing such bridges, and that the cost of constructing the bridges is so blended and commingled with the legitimate expenses that it can not be ascertained and separated. It is contended that by reason of the facts above stated the whole assessment is void.

When the opinion was prepared in this case we did not think, nor do we think now, that the rules applicable to an ordinary tax had any application to cases of the class to which this belongs.

Under the provisions of section 5092, R. S. 1881, the board of commissioners are required to appoint three disinterested freeholders of the county, whose duty it is to make a report to said board at its next regular session, containing, among other things, an estimate of the costs of the improvement sought to be made. By the provisions of section 5096, the board are further required to appoint three other disinterested freeholders of the county, whose duty it is, upon actual view, to apportion the estimated expenses of the improvement upon the real property embraced in the order for the improvement, according to the benefits derived therefrom, and to make re-

port thereof to the county auditor. After the filing of such report the auditor is required to notify those interested. It is made the duty of the board of commissioners, after such notice has been given, to hear any objections that may be made thereto, and if no sufficient reason is shown why it should not do so, they are required to approve and confirm the report, and order the amount due from each tract of land to be assessed against the same.

The order of the board of commissioners approving and confirming the report has the force and effect of a judgment against the owner of the land thus notified, in so far as it affects the land. This judgment is as binding upon the parties as the judgment of any other court of competent jurisdiction upon the finding of the court or the verdict of a jury. If any owner of land assessed has any valid objection to the assessment it is his duty to avail himself of such objection, when brought into court for that purpose, and if he fails to do so the judgment estops him from making such objection in any collateral proceeding like the one before us. *Million* v. *Board, etc.*, 89 Ind. 5; *Osborn* v. *Sutton*, 108 Ind. 443; *White* v. *Fleming*, 114 Ind. 560.

It will thus be seen that the authorities applicable to an ordinary tax, levied without notice to the parties to be affected thereby, have no application to this case.

As no effort was made to appeal the proceedings, resulting in the assessment which the appellant seeks to enjoin, we do not think the question as to whether an appeal does or does not lie from such a proceeding is involved in this case. Nor are we able to perceive how that question can affect the controversy here waged. Assuming that no appeal lies from such proceeding, as contended by the appellant, it follows that the Legislature has made the findings and judgments of the board of commissioners, in matters of this kind, conclusive. The rule which renders the judgments of a court of competent jurisdiction impervious to collateral

attacks, applies as well where there is no appeal as to cases where appeals are allowable. This being so, the question as to whether an appeal lies from a proceeding to establish a free gravel road is wholly immaterial where judgments of the board of commissioners are attacked collaterally. We do not think we erred in the matter of which complaint is made.

Petition overruled.

Filed March 13, 1891.