WILLIAM PARKER

*v.*

THE COUNTY OF RICHLAND.

|214    165|
|f214    225|

*Opinion filed February 21, 1905.*

FEES AND SALARIES—*compensation for county treasurer includes payment for services as ex officio supervisor of assessments.* The compensation of a county treasurer, as fixed by the resolution of the county board adopted prior to his election, includes compensation for his services as *ex officio* supervisor of assessments; and the county board cannot, by a resolution adopted after his election, allow him additional compensation for such services. (*Foote* v. *Lake County,* 206 Ill. 185, adhered to.)

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Richland county; the Hon. J. R. CREIGHTON, Judge, presiding.

Appellant brought an action of assumpsit against appellee in the circuit court of Richland county and there recovered a judgment for the sum of $600 and costs of suit. On appeal to the Appellate Court for the Fourth District the judgment was reversed and judgment entered against the plaintiff for costs. Upon a certificate of importance the appellant brings the case to this court.

The declaration alleges that the plaintiff was elected county treasurer of Richland county in November, 1898, and after duly qualifying and giving bond entered upon the duties of his office on the first day of the following December; that said county is under township organization and has less than 125,000 inhabitants; that by virtue of the law in relation to revenue, approved February 25, 1898, the office of supervisor of assessments was created, section 2 of which act provides that in counties under township organization of less than 125,000 inhabitants the county treasurer shall be *ex officio* supervisor of assessments in his county, and that he

shall have a suitable office, to be provided and furnished by the county board, in which he shall keep, subject to the inspection of those who desire to consult the same, the assessment books returned to him as directed by law, shall keep his office open for business, etc., and may, "with the advice and consent of the county board, appoint necessary deputies and clerks, their compensation to be fixed by the county board and paid by the county." It is then alleged that the county board, on the 21st day of February, 1899, passed a resolution in the words and figures following, to-wit:

*"Be it resolved,* That inasmuch as the new Revenue law of 1898 makes the county treasurer *ex officio* supervisor of assessments; and be it further resolved, that he be allowed $300 per annum for that purpose."

Pleas being filed to the declaration and issues joined thereon, a jury was waived and the case submitted to the court, by agreement of the parties, on a stipulated state of facts. The agreement of facts applies also to a suit by the county against the plaintiff for money alleged to belong to the county wrongfully retained by him as county treasurer. At the conclusion of the trial numerous propositions were submitted by the defendant to be held as the law applicable to the case, some of which were held, others modified and still others refused. So far as appears from the abstract the plaintiff submitted no proposition whatever.

The facts agreed upon, so far as we deem them material to the decision of the case, are as follows: Prior to the election of the plaintiff on September 14, 1898, the board of supervisors of the county fixed his compensation and expenses for the term of his office at $1200 per year, to be paid out of the fees and earnings of the office when collected by him. This allowance included salary, necessary clerk hire and all expenses of his office, of every kind and description, during the four years commencing December, 1898, except stationery and fuel. The resolution provided that no additional sum or sums of money should be allowed to said officer by the board of supervisors during the said four years for the per-

formance of any financial duties pertaining to the office of treasurer. It was further agreed that the resolution of February 21, 1899, set out in the declaration, was adopted by the county board and has never been rescinded or repealed. The stipulation then is, that he was duly elected, qualified and entered upon the duties of his office, as set forth in the declaration, and has received $1200 for each of the four years of his term, according to the resolution of the county board on September 14, 1898; that in his report for 1899 he took $300 for his compensation as supervisor of assessments, which was approved by the board; that at the June meeting in 1900 he presented a bill for salary as supervisor of assessments for one-half year for $150, which was disallowed, and at the September meeting following he presented a like bill for $300, which was also disallowed. At the November meeting, 1900, the same bill was again presented and disallowed, but he retained the money,—which $300 is the basis of the suit by the county against the plaintiff and his sureties above mentioned. At the December meeting, 1900, he presented with his final settlement a claim, as follows: "To four years' services as supervisor of assessments, $1200; credit by county order, $300, by cash, $300; balance due, $600," which is the only claim or bill filed for any services as supervisor of assessments for the years 1901 and 1902, and which was rejected by the county board. The $600 claimed as a balance therein is the amount for which the said William Parker has brought this suit. It is also stipulated that "during the years 1900, 1901 and 1902 the said William Parker paid out for services rendered for him by a deputy supervisor, and necessary clerk hire, the sum of $300 each year," and finally, "that the only question involved in the suit brought by the said William Parker is the right to recover the sum of $600 as compensation for the years 1901 and 1902, and as supervisor of assessments, and the right of the county to recover $300 as retained for the year 1900."

JOHN LYNCH, Jr., for appellant.

JOHN C. RITTER, State's Attorney, LEVI CLODFELTER, and S. J. GEE, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

We have held that section 2 of the Revenue act of 1898, providing that in counties of this class the county treasurer shall be *ex officio* the supervisor of assessments, does not create a new office but simply adds new duties to the office of county treasurer; and also, that under that act the compensation of a county treasurer, as fixed by the county board according to law, includes payment for his services rendered as *ex officio* supervisor of assessments. (*Foote* v. *Lake County,* 206 Ill. 185.) That case, under the foregoing stipulation of facts, is decisive of the case at bar.

Counsel for appellant earnestly insists that the cases are distinguishable, but with this position we cannot agree. It is said that in the *Foote case* the county board was never requested to make any allowance under section 2 of the act of 1898, and was not requested to and did not make any allowance, under section 46 of said act, for salary of supervisor of assessments; that Foote, during his lifetime, never made any claim for money expended under section 2, so far as appears from the record, and never presented any claims under section 46. The same is true in this case. Section 46 referred to provides that "the salary of the county assessor, supervisor of assessments and members of the board of assessors and board of review shall all be paid out of the county treasury on bills duly certified and approved by the county board." The resolution of February 21, 1899, which, as we understand, is the basis of this action, though awkwardly drawn, was only an attempt on the part of the county board to increase the county treasurer's salary from $1200 to $1500 per year because he was, by law, *ex officio* supervisor of assessments. But the act of 1898 not creating a new office

and simply adding new duties to the office of county treasurer, whose compensation had been fixed according to law by the resolution of September 14, 1898, that compensation could neither be diminished nor increased during his term of office. The bills presented by the plaintiff, as shown by the stipulation, were for services as supervisor of assessments, and not for necessary deputies and clerk hire. Moreover, the resolution of September 14, 1898, as held in the *Foote case,* included any payments made by him for services rendered as *ex officio* supervisor of assessments.

The case seems to be argued on behalf of the appellant as though the action was for necessary deputy and clerk hire under the last provision of section 2 of the act of 1898, which is not supported by the facts. If the plaintiff, "with the advice and consent of the county board," had appointed necessary deputies and clerks, their compensation having been fixed by the county board, and had presented bills for such compensation and the county board had refused to allow the same, a different question would be presented. That is, whether, notwithstanding the resolution of September 14, 1898, such necessary deputy and clerk hire, as *ex officio* supervisor of assessments, could have been legally allowed would present another question. But, as we have said, the facts in this case present no such question, and because of the subsequent amendment of the statute the question suggested is no longer of practical importance.

The power and duty of the legislature to provide for the assessment of property for purposes of taxation, as argued by counsel, is undoubted, but when it had so provided and prescribed the officers through whom the assessment or supervision of assessments shall be made and how such officers shall be paid, a different method cannot be adopted. Here the duties of supervisor of assessments are simply added to the duties of county treasurer in counties of the class to which the county of Richland belongs. His compensation, clerk hire and other expenses are to be fixed and allowed as county

treasurer, and when so fixed, the expenses and compensation being included in one sum, can neither be added to nor taken from during his term of office. ·

We think it clear that there is no view of the law under which the judgment of the circuit court can be sustained, and therefore it is unnecessary to pass upon the propositions held and refused. The Appellate Court properly reversed that judgment and gave final judgment for the costs of the suit.

*Judgment affirmed.*