# F. G. Allen et al., Appellants, v. The United States Fidelity & Guaranty Company of Baltimore, Maryland, Appellee.

## Gen. No. 6,032.

1. OFFICERS, § 2*—*imposing duties of assessment supervisor on county treasurer as creating new office.* A new office was not created by section 2 of the Revenue Act (J. & A. ¶ 9517) providing that during their terms of office, county treasurers should be *ex officio* supervisors of assessments in their respective counties.

2. COUNTIES, § 45*—*when county treasurer not entitled to extra compensation as assessment supervisor.* A county treasurer is not entitled to retain in addition to the compensation fixed by the county board, that prescribed by section 2 of the Revenue Act (J. & A. ¶ 9517) for his services as supervisor of assessments.

3. PRINCIPAL AND SURETY, § 8*—*when losses due to carelessness or errors of judgment within bond covering acts constituting lar-*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Allen v. The U. S. Fid. & Guar. Co. of B. Md., 193 Ill. App. 193.

*ceny or embezzlement.* A liability incurred by the sureties of a county treasurer due to honest errors of judgment or acts of carelessness on his part are not within a bond indemnifying the sureties against loss or damage by "reason of any act of fraud or dishonesty, amounting to larceny or embezzlement" on the part of such officer.

4. CONTRACTS, § 199*—*when punctuation considered in construing contract.* In the construction of contracts and other writings, punctuation, although not necessarily controlling, sheds light on the meaning of the parties.

5. PRINCIPAL AND SURETY, § 8*—*when liability accrues on bond against acts constituting larceny or embezzlement.* No liability arises on a bond of indemnity against damage or loss sustained by "reason of any act of fraud or dishonesty, amounting to larceny or embezzlement" of a county treasurer, unless some act is shown which amounts to one of such crimes, since the words "amounting to larceny or embezzlement" qualify the word "act" and not "dishonesty."

6. PRINCIPAL AND SURETY, § 8*—*wrongful retention by county treasurer of salary as assessment supervisor as within indemnity against acts constituting larceny or embezzlement.* A liability incurred by the sureties of a county treasurer on it being held that he had no right to retain the compensation fixed by section 2 of the Revenue Act (J. & A. ¶ 9517), for his services as supervisor of assessments, is not within the terms of a bond indemnifying the sureties from loss or damages "by reason of any act of fraud or dishonesty, amounting to larceny or embezzlement" on the part of such officer, where, in retaining the money, he acted without fraud or dishonesty on the advice of credible and competent counsel, and there was room for an honest difference of opinion as to his right thereto.

7. APPEAL AND ERROR, § 1466*—*when admission of incompetent evidence not reversible error.* A case will not be reversed for the admission of incompetent evidence where no question of fact was presented for the jury, and the court properly directed a verdict.

Appeal from the Circuit Court of Rock Island county; the Hon. ROBERT W. OLMSTED, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed March 9, 1915.

J. T. & S. R. KENWORTHY and J. B. & J. L. OAKLEAF, for appellants.

JUDAH, WILLARD, WOLF & REICHMANN and SEARLE & MARSHALL, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE CARNES delivered the opinion of the court.

David H. Lyons was county treasurer of Rock Island county for the term, four years, beginning in December, 1902. The appellants, F. G. Allen and fourteen others, were the sureties on his official bond, which was conditioned that he should, "justly and fairly account for and pay over all moneys that may come into his hands by virtue of his said office, and shall well and truly perform all and every act and duty enjoined upon him by the laws of this State to the best of his skill and ability, and shall deliver up all moneys, papers, books, records and other things appertaining to said office whole, safe and undefaced, when lawfully required to do so."

These sureties obtained from the appellee, The United States Fidelity & Guaranty Company of Baltimore, Maryland, an indemnifying bond which was by renewals kept in force during the entire term of office, conditioned that it would, "pay and reimburse the obligees aforesaid all costs, losses, damages and expenses, which they may sustain or suffer by reason of any act of fraud or dishonesty, amounting to larceny or embezzlement on the part of the said David Hamilton Lyons, in connection with the duties of his said office, and which shall have been committed during the period from December 1, 1902."

County treasurers were during this time *ex officio* supervisors of assessments in their respective counties under a provision of our Revenue Act (J. & A. ¶ 9517), and it is there provided that they shall "receive as compensation for his services as supervisor of assessments the sum of one thousand dollars ($1,000) per annum."

The law is now settled that this provision of the Revenue Act did not create a new office and that the county treasurer as supervisor of assessments is not entitled to retain the compensation fixed by that statute, in addition to his compensation fixed by the

196    APPELLATE COURTS OF ILLINOIS.

Allen v. The U. S. Fid. & Guar. Co. of B. Md., 193 Ill. App. 193.

county board. There was an opinion to that effect filed by the Supreme Court in December, 1903, construing the act as it stood prior to the amendment of 1903, (*Foote v. Lake County*, 206 Ill. 185); another followed in February, 1905 (*Parker v. County of Richland*, 214 Ill. 165); and another in December, 1911 (*People v. Bowman*, 253 Ill. 234). There is now and can be, no question that Lyons had no legal right to retain any money on account of that provision of the statute, but there was room for honest difference of opinion in the matter. He did retain during his term of office, acting under the advice of credible and competent attorneys at law of his county that he had the legal right to do so, $3,416.70 as his compensation as supervisor of assessments.

In December, 1906, the county board instructed the State's Attorney of the county to procure the opinion of the Attorney General as to the right of Lyons to retain this amount on that account, and receiving an opinion that he had no right to do so, the board afterwards caused a suit in chancery to be begun and prosecuted against Lyons and the sureties on his official bond, to reform the bond and recover said amount, which suit was determined on appeal by this court and opinion filed March 13, 1912 (*People v. Lyons*, 168 Ill. App. 396). The decree in that case ordered the payment of said sum, and interest and costs by the defendant. Appellants, the sureties, paid the amount required by the decree and afterwards brought this action claiming a liability for payment of decree, interest, costs and expenses of $5,123.64 on the indemnifying bond given them by appellee. A jury trial resulted in a verdict directed for the defendant and judgment thereon against the plaintiffs, from which judgment this appeal is prosecuted.

Appellants argue that appellee stands in the place of Lyons and its liability to them is the same as his. But it is evident from a comparison of the language

of the above quoted conditions of the two bonds that appellee undertook to restrict its liability to losses caused by the dishonesty of Lyons, and did not intend to become liable for honest errors of judgment, or acts of carelessness, that appellants were clearly responsible for under the conditions of the bond executed by them.

Appellants construe the bond as an indemnity against any act of fraud, or any act of dishonesty amounting to larceny or embezzlement, thus making the words "amounting to larceny or embezzlement" qualify the word "dishonesty," instead of the word "act." They claim that the case of *City Trust Safe Deposit & Surety Co. v. Lee,* 204 Ill. 69, is decisive of the question, and quote the language of the bond in that case as "dishonesty or fraud, amounting to larceny or embezzlement," and say the court held that the words "larceny or embezzlement" did not qualify the word "dishonesty" but did qualify the word "fraud." Appellants' quotation is not from the opinion of the court. The Supreme Court did not quote the condition of the bond under consideration but said: "The loss guarantied was that sustained by the appellee through the dishonesty or any act of fraud of Morrow amounting to larceny or embezzlement." The case was heard by the Supreme Court on appeal from the Appellate Court of the First District. The opinion of the Appellate Court is reported in 107 Ill. App. 263, and the language in the condition of the bond is quoted on page 267, where it is said that the guaranty was against loss "sustained by the employer by or through the dishonesty or any act of fraud of the employee amounting to larceny or embezzlement, in connection with the duties," etc. It will be observed that the language in the two instruments differ materially, and the construction of the clause of the bond in the *Lee* case, *supra,* does not necessarily control here. In quoting the condition of the bond in question here, we have

followed the punctuation as shown by the record. It will readily be seen that if the comma be placed after the word "fraud" instead of the word "dishonesty" the meaning contended for by appellants might be more readily adopted. In the construction of contracts and other writings, punctuation, though not necessarily controlling, sheds light on the meaning of the parties. *Osborn v. Farwell*, 87 Ill. 89; *Crawford v. Burke*, 201 Ill. 581. The Appellate Court of the First District in *American Bonding & Trust Co. v. New Amsterdam Casualty Co.*, 125 Ill. App. 33, had a similar question to determine. The guaranty in that case was against "any act of fraud or dishonesty amounting to larceny or embezzlement committed by the employee during the continuance of this bond." The trial court in its instructions to the jury assumed that the words "amounting to larceny and embezzlement" did not qualify the words "any act of fraud;" doubtless, as the Appellate Court said, considering the *Lee* case, *supra*, as controlling. The Appellate Court points out the difference in the language of the, two guaranties and says that it seems clear that in the bond it was considering the words "fraud or dishonesty," and the words "amounting to larceny or embezzlement" are both phrases qualifying the word "act." We are of the opinion that it is clear in the case at bar that those phrases qualify the word "act"; and admitting appellants' contention that this contract is to be liberally construed in their favor, still we must hold that there is no liability under this bond unless some act be shown that amounted to larceny or embezzlement.

Appellants offered in evidence the bill and decree in the chancery case, above mentioned, in which they were parties defendant, and introduced evidence that appellee was notified of the pendency of that suit; and they claim that appellee is bound by the decree, though it did not become a party to the action. This position

is denied by appellee, on the ground that the decree was not pleaded in this case; that notice to appellee of the pendency of that suit was neither pleaded nor sufficiently proven; and that the conditions of the official bond are so different from the conditions of the indemnifying bond sued on, that acts may be a breach of the first and not of the second. But appellee insists that if the decree in that case is to be considered in this case, it is not conclusive, and that other parts of the record in that case must also be considered, and call our attention to a stipulation appearing of record in that case and introduced in evidence by appellants as follows:

"It is stipulated and agreed between the parties hereto, by their respective counsel, that the sum of three thousand four hundred sixteen and 70/100 dollars ($3,416.70), found by the decree to be due from the defendants to the complainant, is money retained by the defendant, David H. Lyons, under the claim of right as salary for his services as supervisor of assessments, and that said sum is the exact amount that his salary would amount to due him, providing he is entitled to be allowed compensation as supervisor of assessments."

Appellee also offered in evidence the brief filed in this court on the trial here of that chancery case, by the appellants, in which brief they strongly urged that the conduct of Lyons in the matter was entirely free from fraudulent acts, was open, bold, honest and sincere, and much more to the same effect.

It is not necessary to decide the questions of law and fact controlling the effect of that chancery proceeding on the issues here. Appellants offered the decree in evidence and say it is to be taken as conclusive of the matters there found. We find there cited that:

"He the said Lyons, did retain, keep and convert to his own use a certain sum of money, to-wit, $3,416.70, which came into his hands and possession as county treasurer, as aforesaid, which said sum of money the

200     Appellate Courts of Illinois.

Allen v. The U. S. Fid. & Guar. Co. of B. Md., 193 Ill. App. 193.

said Lyons claimed he was entitled to as salary, as supervisor of assessments of said county, but which said sum the court finds he was not so entitled to as supervisor of assessments, or otherwise. * * * That the said David H. Lyons has breached and violated his said official bond and the terms and conditions thereof, and the said bond is hereby declared forfeited.''

It matters little whether even this finding is regarded as conclusive. There is no controversy about the amount Lyons retained and the reason for retaining it, and we may exclude or include all the other evidence as to the record of that chancery case and we have the same result. Appellants were entirely right when they argued in this court, on the former trial, that there was no evidence of fraud or dishonesty on the part of Lyons; and this is the conclusion to be drawn from that part of the record in this case which appellants say is competent evidence, excluding that part which they say is not competent evidence. Appellants say in their argument here:

''There are no disputed questions of fact involved in this case, unless it be the *intention* of Lyons in taking the money of the county and appropriating it to his own use while county treasurer of the county. All the facts essential to the appellants' recovery are either admitted on the record or proved by the appellants and not disputed by the appellee.'' This is true so far as any controversy about the facts is concerned, and would be true as to the balance of the statement if appellants were not, as we hold, mistaken in their statement that ''the appellee occupies precisely the position of Lyons so far as indemnifying the appellants is concerned.''

Neither do we find in the record any question of fact as to the intention of Lyons in taking and retaining the money, nor do we find any evidence that shows or tends to show that he was guilty of larceny or embezzlement in so doing. Of course evidence that a man took property and used it is a part of the chain of

evidence that may be required to convict him of larceny, but it does not prove or tend to prove larceny until it is coupled with some more evidence that he intended to steal it. One cannot be found guilty of the larceny of a loaf of bread on proof that he carried it out of a baker's shop; and if he did take it and carry it away under the belief that it was his own property he does not become guilty of larceny or any other crime if, before he discovers that it was in fact the property of another, he has eaten it and put it out of his power to restore it to the true owner. We find nothing in the record that would sustain a conviction of larceny or embezzlement or even that would justify a committing magistrate in finding that there was probable cause requiring a trial.

Appellants urge that the case should be reversed, because of alleged errors of the court in admitting incompetent evidence. We would discuss this question if the verdict had not been directed, or rather if it had been a case where there was some fact for the jury to find, and the judgment had rested on their findings. But the trial court was of the opinion that there was no controverted question of facts to be submitted to the jury, and in directing a verdict took it upon himself to decide the question as one of law, which it was his duty to do if there was no evidence in the case which with all fair presumptions flowing therefrom would justify a verdict for the plaintiffs. We are of the opinion that the court did not err in so doing, and it follows as in any case decided by the court, whether in law or chancery, that while there might be reversible error in excluding proper evidence, there can hardly be reversible error in admitting improper evidence. Finding no error in the record the judgment is affirmed.

*Affirmed.*